**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CRAIG P. DONOVAN, et al. :
Plaintiffs, :
v. :
THE PUBLIC POLICY CENTER OF NEW JERSEY, et al., :
Defendants. :

CIVIL ACTION NO. 05-1181 (MLC)

**MEMORANDUM OPINION**

**COOPER, District Judge**

The defendants, the Public Policy Center of New Jersey ("PPCNJ"), Mark J. Magyar ("Magyar"), Sharon L. Naeloe ("Naeloe"), W. Michael Murphy, Jr. ("Murphy"), Judith Shaw ("Shaw"), Richard H. Bagger, Michael F. Candwell, Susan A. Cole, Ellen M. Dotto, William G. Dressel, Jr., Joseph E. Gonzales, Jr., Jeannine LaRue, Roger E. Nutt, James Morford, James E. Schroeder, Robert G. Sommer, John Torok, Joan C. Verplanck, Sharon L. Weiner, Melanie Willoughby, and Ronald Applebaum (collectively, the "defendants") move to dismiss the complaint filed by the plaintiffs, Craig P. Donovan ("Donovan") and Linda J. Holaday ("Holaday") (collectively, the "plaintiffs"), for (1) failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), and (2) lack of subject matter jurisdiction, pursuant to Rules 12(b)(1) and

12(h)(3).[1] The Court, for the reasons stated herein, will deny the motion.

**BACKGROUND**

The plaintiffs are two former employees of PPCNJ. Magyar founded PPCNJ on or about September 1, 2001, to serve as a "non-profit organization with missions and programs geared toward the public's education of policy issues facing New Jersey's citizens." (Compl., at ¶¶ 38, 40.) PPCNJ publishes, inter alia, the New Jersey Reporter (the "Reporter") and the New Jersey Heritage magazines. (Id. at ¶ 39.)

PPCNJ hired Holaday to serve as the "full-time Marketing Director . . . when it opened its doors on or about September 1, 2001." (Id. at ¶ 52.) PPCNJ employed Holaday at a salary of $40,000 annually, plus reimbursement of out-of-pocket expenses. (Id. at ¶¶ 32, 53.) As Marketing Director, Holaday was assigned responsibility for PPCNJ's marketing, and she (1) edited photography for all of PPCNJ's publications, and (2) attended and participated in conferences and staff meetings. (Id. at ¶ 54.) Holaday voluntarily terminated her employment with PPCNJ effective November 4, 2003. (Id. at ¶ 55.)

[1] Laurence M. Downes ("Downes") is a named defendant in the action and has been served with a copy of the complaint. (Dkt. entry no. 37, 2-21-06 Aff. of Serv.) However, no counsel has properly entered an appearance on his behalf. (See Dkt. entry no. 40, 3-16-06 Stipulation.) Counsel for the other defendants has not indicated that they also represent Downes.

PPCNJ hired Donovan as its Vice President of Policy and Research, and he "began working in that capacity . . . on or about September 1, 2001." (Id. at ¶ 57.) PPCNJ employed Donovan at a salary of $25,000 annually, plus reimbursement of out-of-pocket expenses. (Id. at ¶¶ 31, 58.) Donovan worked at PPCNJ part-time, for approximately 20-25 hours per week. (Id. at ¶ 59.) Donovan's employment at PPCNJ supplemented his full-time position as a college professor. (Id. at ¶ 64.)

As Vice President of Policy and Research, Donovan was primarily responsible for writing and editing articles for publication in the Reporter and on the Internet. (Id. at ¶ 60.) In this regard,

> [h]is efforts were focused on supporting and developing PPCNJ's work, by analyzing public policy issues, providing research to support such work, promoting public awareness and participation in the analyses and discussions of major issues relating to New Jersey and its citizens, and writing columns or articles about such issues in each edition of the Reporter. He also attended and participated in conferences and regular staff meetings.

(Id.) Donovan voluntarily terminated his employment with PPCNJ on or about December 1, 2003.

The plaintiffs brought this action alleging that the defendants — in particular, PPCNJ — failed to pay their earned wages or reimburse them for expenses incurred while working for PPCNJ. (Compl., at ¶¶ 30, 37, 73-75.) The plaintiffs assert that the defendants violated the (1) Fair Labor Standards Act

("FLSA"), (2) New Jersey State Wage and Hour Law ("NJWHL"), and (3) New Jersey State Wage Payment Law ("NJWPL"). (Id. at ¶¶ 77-107.) The plaintiffs also assert claims for breach of contract and quantum meruit. (Id. at ¶¶ 108-135.) The defendants moved to dismiss on December 1, 2005, claiming that (1) the plaintiffs failed to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), and (2) the Court lacked subject matter jurisdiction, pursuant to Rules 12(b)(1) and 12(h)(3). (Dkt. entry no. 28.)

## DISCUSSION

### I. Standard Of Review For A 12(b)(6) Motion

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). On a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff. Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001). But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted). "Dismissal of claims under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim upon which relief may be granted." Jakomas v. McFalls, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56. Fed.R.Civ.P. 12(b). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted).[2]

The defendants, in moving to dismiss, in part, under Rule 12(b)(6), rely on materials beyond the allegations of the amended complaint, including, inter alia, (1) a certification from the defendants' counsel, Michael Young, Esq. ("Young Cert."), with attached exhibits, (2) a certification from Magyar ("Magyar

[2] "The rationale underlying this exception is that the primary problem raised by considering documents outside the complaint — lack of notice to the plaintiff — is dissipated where the plaintiff has actual notice and has relied upon the documents in framing the complaint." Jones v. Intelli-Check, Inc., 274 F.Supp.2d 615, 625-26 (D.N.J. 2003) (citations omitted).

Cert."), (3) a certification from Naeole ("Naeole Cert."), with attached exhibits, (4) Donovan's curriculum vitae, (5) copies of Donovan's opinion and editorial articles for PPCNJ, (6) a copy of Holaday's 2001 W-2 Wage and Tax Statement, and (7) samples of Holaday's photos published in PPCNJ publications. (See 11-30-05 Young Cert. & Exs.; 11-9-05 Magyar Cert.; 11-8-05 Naeole Cert. & Exs.) The Court will not consider these additional documents submitted by the defendants because they constitute evidence outside the amended complaint, and are neither relied upon by the plaintiffs, nor integral to the amended complaint.[3]

**II. Standard Of Review - Motion To Dismiss For Lack Of Subject Matter Jurisdiction**

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) in one of two ways. Mortensen v. First Fed. Sav. & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977).[4] First, a defendant may challenge

[3] The plaintiffs included certifications from Donovan and Holaday (with attached exhibits) with their opposition papers. The Court, for the reasons discussed supra, will not consider these certifications or any attached exhibits in resolving this motion.

[4] The defendants also move under Rule 12(h)(3), which provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Id. "The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party." Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 880 n.3 (3d Cir. 1992) (citation omitted). However, here "the motions are analytically identical because the only consideration is whether subject matter jurisdiction arises." Id.

subject matter jurisdiction by asserting that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction (a "facial attack"). Id. The Court considers a facial attack under the same standard as a motion to dismiss under Rule 12(b)(6) and, as such, "assume[s] that the [well-pleaded] allegations contained in the complaint are true." Cardio-Med. Assocs. Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 75 (3d Cir. 1983). Also, the Court may dismiss the complaint in a facial attack "only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." Iwanowa v. Ford Motor Co., 67 F.Supp.2d 424, 438 (D.N.J. 1999) (citations omitted).

A defendant may also challenge subject matter jurisdiction by factually contesting the plaintiff's allegations of the existence of subject matter jurisdiction (a "factual attack"). Id. (citation omitted). The Court, when considering a factual attack to subject matter jurisdiction, "may look beyond the pleadings and make its own determination as to whether it has the power to hear the action." Bricker v. Stouchburg Nursery & Garden Ctr., No. 03-6483, 2004 WL 1576652, at *1 (E.D. Pa. July 14, 2004) (citation omitted). "Thus, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

claims.'" Iwanowa, 67 F.Supp.2d at 438 (citation omitted). Moreover, the Court "may consider affidavits, depositions and testimony to resolve factual issues bearing on jurisdiction." Id. (citation omitted). Furthermore, the plaintiff bears the burden of proving that jurisdiction exists. Mortensen, 549 F.2d at 891.

A 12(b)(1) "factual evaluation may occur at any stage of the proceedings, from the time the answer has been served until after the trial has completed." Id. (explaining that "[a] factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted"). Because the defendants have not filed an answer, the Court considers this motion a facial attack.[5] Thus, the Court will only analyze the allegations in the complaint and will not consider the additional documents provided by the parties as described supra in resolving the motion.

**III. Subject Matter Jurisdiction Under The FLSA**

The defendants contend that the Court lacks subject matter jurisdiction over this action because the plaintiffs are exempt from coverage under the FLSA as bona fide executive, professional, or administrative employees. (Defs. Br., at 1.)[6]

---

[5] The defendants also characterize their motion as a "facial attack." (Defs. Br., at 5.)

[6] The defendants argue for the first time in their reply brief that Donovan is an exempt independent contractor. (Defs.

The FLSA provides, in those industries within its scope, minimum labor standards by regulating, inter alia, wages, hours, and overtime compensation. Excluded from the FLSA's scope is "any employee employed in a bona fide executive administrative, or professional capacity." 29 U.S.C. § 213(a)(1).[7] PPCNJ, as the employer, bears the burden of establishing that an exemption applies to its employees, and the exemptions are narrowly construed against the employer. Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); see Brock v. Claridge Hotel & Casino, 846 F.2d 180, 183 (3d Cir. 1988) (explaining that employer has "burden of proving the applicability of the [FLSA] exemption").

**A. FLSA Exemptions**

1. Professional Employee Exemption

The FLSA provides an exemption for any employee employed in a bona fide professional capacity. A bona fide professional employee is defined as any employee who is:

(1) Compensated on a salary or fee basis at a rate of not

---

Reply Br., at 2.) The Court will not consider this contention because it is improper to raise arguments for the first time in reply papers. Reap v. Cont'l Cas. Co., 199 F.R.D. 536, 550 n.10 (D.N.J. 2001).

[7] "The FLSA does not define 'executive, administrative, or professional capacity'; instead, it expressly delegates that task to the Secretary of Labor who may 'from time to time' alter the definitions." Kennedy v. Commw. Edison Co., 410 F.3d 365, 369 (7th Cir. 2005) (citing 29 U.S.C. § 213(a)(1)).

> less than $455 per week . . ., exclusive of board, lodging, or other facilities; and
> (2) Whose primary duty is the performance of work:
>
> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
> (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

29 C.F.R. § 541.300(a).[8] The professional exemption is separated

---

[8] An employee is considered to be paid on a "salary basis" "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). On the other hand, an employee is paid on a "fee basis" "if the employee is paid an agreed sum for a single job regardless of the time required for its completion." Id. at § 541.605(a).

An employee's "primary duty" is the "principal, main, major or most important duty that the employee performs." Id. at § 541.700(a). The Court, in determining an employee's primary duty, considers "all [of] the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id. Further, the Court can consider, inter alia, the following factors: (1) "the relative importance of the exempt duties as compared with other types of duties"; (2) "the amount of time spent performing exempt work"; (3) "the employee's relative freedom from direct supervision"; and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." Id. In determining whether exempt work is the primary duty of an employee,

> the amount of time spent performing exempt work can be a useful guide . . .. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and . . . exempt employees [need not] spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

Id. at § 541.700(b).

into two categories: (1) the "learned professional" exemption, and (2) the "creative professional" exemption. Id.

a. The "learned professional" exemption

An employee's primary duty, to qualify for the learned professional exemption, must be "the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." Id. at § 541.301(a). Thus, PPCNJ must satisfy three elements to show that the plaintiffs are learned professionals: "(1) The employee must perform work requiring advanced knowledge; (2) The advanced knowledge must be in a field of science or learning; and (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction." Id.

"[W]ork requiring advanced knowledge" constitutes work which

> is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances. Advanced knowledge cannot be attained at the high school level.

Id. at § 541.301(b). Also, "field[s] of science or learning" include

> the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other

> similar occupations that have a recognized professional status as distinguished from the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advanced type, but is not in a field of science or learning.

Id. at 541.301(c).

The phrase "customarily acquired by a prolonged course of specialized intellectual instruction" limits

> the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession. The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree. However, the word "customarily" means that the exemption is also available to employees in such professions who have substantially the same knowledge level and perform substantially the same work as the degreed employees, but who attained the advanced knowledge through a combination of work experience and intellectual instruction. Thus, for example, the . . . exemption is available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry. However, the . . . exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The . . . exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction.

Id. at § 541.301(d).

"The areas in which the [learned] professional exemption may be available are expanding." Id. at § 541.301(f). "When an advanced specialized degree has become a standard requirement for a particular occupation, that occupation may have acquired the characteristics of a learned profession." Id. Moreover,

"[a]ccrediting and certifying organizations . . . may develop . . . specialized curriculums and certification programs which, if a standard requirement for a particular occupation, may [also] indicate that the occupation has acquired the characteristics of a learned profession." See id. (listing examples).

b. The "creative professional" exemption

An employee's primary duty, to qualify for the creative professional exemption, must be "the performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor as opposed to routine mental, manual, mechanical or physical work." Id. at § 541.302(a). Also, the work performed must be "in a recognized field of artistic or creative endeavor . . . such [as] music, writing, acting and the graphic arts." Id. at § 541.302(b).[9] Further,

> [t]he requirement of "invention, imagination, originality or talent" distinguishes the creative professions from work that primarily depends on intelligence, diligence and accuracy. The duties of employees vary widely, and exemption as a creative professional depends on the extent of the invention, imagination, originality or talent exercised by the employee. Determination of exempt creative professional status, therefore, must be made on a case-by-case basis. This requirement generally is met by actors, musicians, composers, conductors, and soloists; painters who at most are given the subject matter of their painting; cartoonists who are merely told the title or underlying concept of a cartoon and must

---

[9] However, this exemption "does not apply to work which can be produced by a person with general manual or intellectual ability and training." Id. at § 541.302(a).

> rely on their own creative ability to express the concept; essayists, novelists, short-story writers and screen-play writers who choose their own subjects and hand in a finished piece of work to their employers (the majority of such persons are, of course, not employees but self-employed); and persons holding the more responsible writing positions in advertising agencies. This requirement generally is not met by a person who is employed as a copyist, as an "animator" of motion-picture cartoons, or as a retoucher of photographs, since such work is not properly described as creative in character.
>
> Journalists may [also] satisfy the duties requirements for the creative professional exemption if their primary duty is work requiring invention, imagination, originality or talent, as opposed to work which depends primarily on intelligence, diligence and accuracy. Employees of newspapers, magazines, television and other media are not exempt creative professionals if they only collect, organize and record information that is routine or already public, or if they do not contribute a unique interpretation or analysis to a news product. Thus, for example, newspaper reporters who merely rewrite press releases or who write standard recounts of public information by gathering facts on routine community events are not exempt creative professionals. Reporters also do not qualify as exempt creative professionals if their work product is subject to substantial control by the employer. However, journalists may qualify as exempt creative professionals if their primary duty is performing on the air in radio, television or other electronic media; conducting investigative interviews; analyzing or interpreting public events; writing editorials, opinion columns or other commentary; or acting as a narrator or commentator.

Id. at §§ 541.302(c) & (d).

2. Administrative Employee Exemption

The FLSA also exempts any employee employed in a bona fide administrative capacity. 29 U.S.C. § 213(a)(1). An employee is employed in an administrative capacity if (1) the employee is paid on a salary or fee basis of at least $455 per week; (2) the

employee's "primary duty" includes the performance of office work and non-manual work that is "directly related to management policies or general business operations of the employer or the employer's customers"; and (3) the employee's performance of his or her primary duties include work "requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.200(a).

"To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." Id. at § 541.201(a). Work "directly related to the management or general business operations" refers to work "assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." Id. Moreover,

> [w]ork directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

Id. at § 541.201(b).

An employee's primary duty, to meet the administrative exemption, must also "include the exercise of discretion and

independent judgment with respect to matters of significance." Id. at § 541.202(a). The "exercise of discretion and independent judgment" "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." Id. "The term 'matters of significance' refers to the level of importance or consequence of the work performed." Id.

The Court must interpret the phrase "discretion and independent judgment" "in the light of all the facts involved in the particular employment situation in which the question arises." Id. at § 541.202(b). The Court, in conducting this analysis, considers, inter alia, the following factors:

> [(1)] whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;
> [(2)] whether the employee carries out major assignments in conducting the operations of the business;
> [(3)] whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;
> [(4)] whether the employee has authority to commit the employer in matters that have significant financial impact;
> [(5)] whether the employee has authority to waive or deviate from established policies and procedures without prior approval;
> [(6)] whether the employee has authority to negotiate and bind the company on significant matters;
> [(7)] whether the employee provides consultation or expert advice to management;
> [(8)] whether the employee is involved in planning long- or short-term business objectives;
> [(9)] whether the employee investigates and resolves matters of significance on behalf of management; and
> [(10)] whether the employee represents the company in

> handling complaints, arbitrating disputes or resolving grievances.

Id.

If an employee exercises "discretion and independent judgment",

> the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment. . . . [Further, the] exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. . . . The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work.

Id. at §§ 541.202(c) & (e).

**B. Application of the Exemptions to the Plaintiffs**

The complaint states that (1) Donovan's salary at PPCNJ was $25,000 annually, and (2) Holaday's salary at PPCNJ was $40,000 annually. Thus, examining only the allegations in the complaint, the plaintiffs' salaries appear to satisfy the salary and wage

requirements of the professional and administrative exemptions.[10] Concerning the plaintiffs' primary duties as employees of PPCNJ, Donovan served as the "Vice President of Policy and Research" and Holaday was the "Marketing Director". However, the mere fact that the plaintiffs' job titles seemingly imply management or supervisory positions at PPCNJ, is insufficient in itself to establish the plaintiffs' statuses as exempt employees. See id. at § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.")

The substantive allegations in the complaint regarding the plaintiffs' employment duties also do not support a finding that they were professional or administrative employees. As the determination whether the plaintiffs are exempt as professional or administrative employees is fact intensive and must be made on a case-by-case basis, a conclusion that the plaintiffs are exempt at this early stage of the litigation would be premature. Also, the defendants have not argued that the allegations in the complaint demonstrate that the plaintiffs are exempt from FLSA coverage. Instead, the defendants rely on certifications and

---

[10] At a salary of $25,000, Donovan would earn approximately $480 per week. Also, Holaday, at a salary of $40,000, would earn approximately $769 per week.

other documentation which the Court has already excluded from consideration. Therefore, because the allegations in the complaint do not establish that the plaintiffs[11] are exempt professional or administrative employees, the Court will deny the motion to dismiss under Rules 12(b)(1), 12(b)(6), and 12(h)(3).

**CONCLUSION**

The Court, for the reasons discussed herein, finds the defendants have not shown that the allegations in the complaint show that the plaintiffs are exempt from FLSA coverage as professional or administrative employees. Accordingly, the Court will deny the motion to dismiss under Rules 12(b)(1), 12(b)(6), and 12(h)(3). This ruling is without prejudice to the right of the defendants to move to dismiss under Rule 12(b)(1) at an appropriate time, if the defendants seek to assert a "factual" challenge to subject matter jurisdiction. The Court will issue an appropriate order.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

[11] The defendants fail to address the claims concerning NJWHL and NJWPL.